**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LEXINGTON HEARTH LAMP | ) | |
| AND LEISURE, LLC | ) | Case No. 05-51398 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| IN RE: | ) | |
| | ) | |
| ELITE FURNITURE | ) | |
| MANUFACTURING, INC. | ) | Case No. 06-50668 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| IN RE: | ) | |
| | ) | |
| JEFFREY DALE DUPREE, | ) | Case No. 07-50890 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

These matters are before the Court upon consideration of the respective Applications for

Final Allowance of Compensation for Attorney for Trustee (the "Applications") filed by Bruce

Magers (the "Trustee") in each of the above-referenced Chapter 7 cases.  In each case, Mr.

Magers served not only as the Chapter 7 trustee but also as the attorney for the Trustee.  The

United States Bankruptcy Administrator filed an objection to each of the Applications, arguing

that they improperly contained requests for attorney compensation for services that should be

properly characterized as trustee duties.  Because of the identity of issues, the Court has

consolidated its consideration of these matters.

1

For the most part, these cases are examples of relatively uncomplicated Chapter 7 asset cases routinely seen in this court.  Assets were recovered by the Trustee in each case, but little or no dividend will be paid because administrative claims will consume all or almost all of the funds in the estate.  While that situation is an unfortunate but common occurrence, it emphasizes the need for and, indeed, the duty of bankruptcy courts to scrutinize Chapter 7 trustee commissions and fees.  These cases provide an opportunity for examining and resolving recurring fee issues involving the attorney for Chapter 7 trustee.

## FACTS AND PROCEDURAL POSTURE

Lexington Hearth Lamp and Leisure, LLC

This case was initiated by the filing of a voluntary petition under Chapter 7 on May 5, 2005.  Mr. Magers was appointed as the Chapter 7 trustee.  Mr. Magers also served as the attorney for the Trustee.[1]  On July 11, 2005, the Trustee filed an application to employ Robert E. Price, Jr. as special counsel for the Trustee, and such an order was entered on October 31, 2005. On November 23, 2005, Mr. Price, in his capacity as special counsel for the Trustee, filed two adversary proceedings to recover preferences.  One adversary proceeding was settled for $5,900.00, and the other was voluntarily dismissed.   On May 8, 2006, the Court authorized the Trustee to pay allowed fees and expenses of $1,961.12 to Mr. Price as special counsel, and such compensation was paid.  The Trustee reviewed the claims filed in the case and filed three objections.  Two objections were sustained because the claims in question were unsecured claims rather than secured ones.  The third objection was denied.  The Trustee has $5,390.31 on

---

[1]Pursuant to a November 6, 1992 Standing Order in this District, Chapter 7 panel trustees are authorized to serve as their own counsel.

hand.

The case administration in this case was routine, and the legal services for which attorney compensation is sought by Mr. Magers consist primarily of negotiating with creditors, reviewing pleadings, communicating with special counsel, and objecting to claims. For the rendition of legal services to this estate, Mr. Magers seeks compensation as attorney for the Trustee in the amount of $3,547.50 and Trustee commission and expenses of $1,529.71, for total compensation of $5,076.92.[2] The amended objection of the Bankruptcy Administrator asserts that $646.00 of attorney compensation should be disallowed because some of the requested compensation pertains to routine statutory duties that must be performed by the Trustee pursuant to Section 704 of the Bankruptcy Code, including discussions with special counsel in which Mr. Magers was functioning as the Trustee or client, not as the attorney for the Trustee.

Elite Furniture Manufacturing, Inc.

This case was initiated by the filing of a voluntary petition under Chapter 7 on May 26, 2006. Mr. Magers was appointed as the Chapter 7 trustee, and he also served as the attorney for the Trustee. On August 4, 2006, the Trustee filed an application to employ Mr. Price as special counsel for the Trustee, and such an order was entered on September 15, 2006. On November 7, 2006, the Trustee filed a motion to sell certain personal property. Lexington State Bank (the "Bank"), a secured creditor of the Debtor, filed an objection, which was eventually resolved by a consent order entered on December 18, 2006. On January 4, 2007, Mr. Price, in his capacity as special counsel for the Trustee, filed a motion for authority to conduct a Rule 2004 examination

---

[2]If all of the requested Trustee's commission, Trustee's expenses, and compensation as attorney for the Trustee are allowed in the Lexington Hearth case, they will consume 94% of the funds left in the estate. The projected dividend to general unsecured creditors is 0.4096%.

of an officer of the Debtor, which was granted by order entered on February 5, 2007.  On February 19, 2007, Mr. Price filed a motion for court approval of a post-petition lease of the Debtor's premises, to which the Bank objected.  The motion to approve the lease was withdrawn in favor of a global settlement with the Bank.  The Court initially denied the Trustee's settlement with the Bank but reconsidered and approved the settlement by order entered on May 21, 2007.  The settlement netted the estate more than $34,000.00.  On December 3, 2007, the Court authorized the Trustee to pay allowed fees and expenses of $8,602.48 to Mr. Price as special counsel, and such compensation was paid.  Pursuant to the Final Report filed by the Trustee on July 15, 2008, the estate has $13,627.26 on hand.

The case administration in this case was not routine.  The legal services for which attorney compensation is sought by Mr. Magers consist primarily of negotiating with counsel for the Bank, reviewing pleadings, communicating with special counsel, and communicating with other parties in the case.  For the rendition of legal services to this estate, Mr. Magers seeks compensation as attorney for the Trustee in the amount of $18,214.00 and Trustee commission and expenses of $7,607.36, for total compensation of $26,428.72.[3]  The amended objection of the Bankruptcy Administrator asserts that $1,851.80 of attorney compensation should be disallowed since it pertains to tasks that should be properly characterized as trustee duties, including discussions with special counsel.

Jeffrey Dale DUPREE

This case was initiated by the filing of a voluntary petition under Chapter 7 on June 11,

---

[3]The requested Trustee's commission, Trustee's expenses, and compensation as attorney for the Trustee exceed the funds left in the Elite Furniture estate.  The Trustee proposes that they be "prorated and paid at 52.77514%."  General unsecured creditors will receive no dividend.

2007.  Mr. Magers was appointed as the Chapter 7 trustee, and he also served as the attorney for the Trustee.  On August 2, 2007, the Trustee filed an application to employ Mr. Price as special counsel for the Trustee, and such an order was entered on August 6, 2007.  On October 12, 2007, the Trustee filed an application to employ Daniel C. Bruton as special counsel for the Trustee, substituting Mr. Bruton for Mr. Price, and such an order was entered on October 15, 2007.  On October 16, 2007, Mr. Bruton, in his capacity as special counsel for the Trustee, filed an adversary proceeding to recover a preference, which resulted in the receipt of $3,191.11 by the estate.  On April 4, 2008, the Court authorized the Trustee to pay allowed fees and expenses of $1,331.92 to Mr. Bruton as special counsel, and such compensation was paid.  Pursuant to the Final Report filed by the Trustee on May 28, 2008, the estate has $1,861.88 on hand.

The case administration in this case was routine, and the legal services for which attorney compensation is sought by Mr. Magers consist primarily of reviewing pleadings, communicating with special counsel, and reviewing applications for compensation.  For the rendition of legal services to this estate, Mr. Magers seeks compensation as attorney for the Trustee in the amount of $1,631.50 and Trustee commission and expenses of $812.93, for total compensation of $2,444.43.[4]  The amended objection of the Bankruptcy Administrator asserts that $336.00 of attorney compensation should be disallowed since it pertains to tasks that should be properly characterized as trustee duties, including discussions with special counsel.

The initial hearings on the Applications were held on August 20, 2008.  At that hearing, the Court granted more time for the Bankruptcy Administrator and the Trustee to supplement the

---

[4]The requested Trustee's commission, Trustee's expenses, and compensation as attorney for the Trustee exceed the funds left in the <u>Dupree</u> estate.  The Trustee proposes that they be "prorated and paid at 76.16827%."  General unsecured creditors will receive no dividend.

5

record and to support their arguments.  On September 2, 2008, the Bankruptcy Administrator

filed more specific objections in each case and cited legal authorities.  The Trustee did not

supplement the Applications.  On September 17, 2008, final hearings were held on the

Applications.  At that hearing, Mr. Price represented the Bankruptcy Administrator[5] and Mr.

Magers appeared in his capacity as Trustee.  The Court took the matters under advisement.

## JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28

U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States

District Court for the Middle District of North Carolina on August 15, 1984.  This is a core

proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), which this Court may hear and

determine.

## DISCUSSION

This opinion begins with an explanation of the statutory compensation scheme for

Chapter 7 bankruptcy trustees, followed by a more thorough explanation of the objections of the

Bankruptcy Administrator to the Applications in these cases.  Because the bankruptcy court has

an independent duty to review the reasonableness of the fees of any professional, even if no

objection is raised,[6] the Court will examine all of the time entries in the Applications, not just the

---

[5]On November 12, 2007, Mr. Price began working in the office of the Bankruptcy
Administrator.

[6]"The Court has an independent duty to review all requests for fees to determine their
allowability under § 330 of the Bankruptcy Code, even if no party in interest objects to the
amount of fees sought."  In re Brown, 371 B.R. 486, 499 (Bankr. N.D. Okla. 2007).  "[T]he
bankruptcy court has an independent duty to review the reasonableness of a professional's fees,
even when the trustee who employed that professional does not object."  In re Squaglia, No. 04-
12017, slip op. at *6 (Bankr. E.D. Cal. 2008) (2008 WL 3925223).

ones to which the Bankruptcy Administrator objected.

## A.  The Compensation Scheme for Chapter 7 Trustees

In a case filed under Chapter 7, a trustee is appointed to manage the estate and liquidate the property of the estate in accordance with the Bankruptcy Code, other applicable laws, and court orders.  In exchange for such services, Section 330(a) allows the court to award reasonable compensation to the trustee for actual, necessary services and reimbursement for actual, necessary expenses, as limited by Section 326(a).[7]  Upon court approval, the trustee may also act as the attorney or the accountant for the estate pursuant to Section 327(d).[8]  Under Section 328(a), when the trustee employs himself or his firm as attorney for the estate, the trustee, in his role as attorney, receives compensation for the legal services that he provides,[9] typically on an hourly basis.

---

[7]"[T]he court may award to a trustee . . . or a professional person employed under section 327 or 1103—(A) reasonable compensation for actual, necessary services rendered by the trustee, . . . professional person, or attorney . . . ; and (B) reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).
> In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a).

[8]"The court may authorize the trustee to act as attorney or accountant for the estate if such authorization is in the best interest of the estate."  11 U.S.C. § 327(d).

[9]"The trustee . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

The court, in determining the amount of reasonable compensation to be awarded, must consider the nature, the extent, and the value of the services, taking into account all relevant factors. In the Matter of U-Can Rent, Inc., 262 B.R. 147, 151 (Bankr. M.D. Ga. 2001). Section 330(a)(3) lists five nonexclusive factors that the court must consider in determining the amount of compensation that may be awarded to a trustee. The factors include the time spent on the services, the rates charged, and whether the services were necessary, beneficial, and reasonable. Id. The overarching principle guiding the approval of compensation to a trustee under Section 330(a) is the reasonableness of the compensation requested. In re Robinson-Wolf, No. 06-16534, slip op. at *2 (Bankr. D. Md. Oct. 10, 2007) (2007 WL 3010579). Within the boundaries of Section 330, courts usually use the lodestar standard as a means for determining the reasonableness of compensation, which is calculated by multiplying a reasonable number of hours spent on a case by a reasonable hourly rate. In re Kieffer, 306 B.R. 197, 205 (Bankr. N.D. Ohio 2004). However, the lodestar standard may be adjusted by qualitative factors.[10]

The burden of proof as to the reasonableness of and entitlement to a fee must be borne by the party seeking the fee. Brake v. Tavormina (In re Beverly Mfg. Corp.), 841 F.2d 365, 371 (11th Cir. 1988); Neville v. Eufaula Bank & Trust Co. (In re U.S. Golf Corp.), 639 F.2d 1197, 1207 (5th Cir. 1981); In re Ameritex Yarn, 378 B.R. 107, 114 (Bankr. M.D.N.C. 2007); In re

---

[10]The qualitative factors may include the requisite time and labor, the novelty and difficulty of the issues, the requisite skill, the preclusion of other employment, the customary fee, the risk incurred, time limitations, the amount involved and the results obtained, the experience, reputation and ability of the counsel, the desirability of the case, the nature and length of the case, and the results obtained in similar cases. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974); In re Meadows Operations, Inc., No. 04-34702, slip op. at *5 (Bankr. D. Utah Mar. 14, 2007) (2007 WL 2915813); U-Can Rent, Inc., 262 B.R. at 156-57; King, 88 B.R. at 768.

Finney, No. 91-20239, slip op. at *25 (Bankr. E.D. Va. Feb. 26, 1997) (1997 WL 33475580).

The need for an attorney's services must be apparent from the description of the services. United States v. Freeland (In re Spungen), 168 B.R. 373, 377 (N.D. Ind. 1993); In re Virissimo, 354 B.R. 284, 291 (Bankr. D. Nev. 2006); In re Garcia, 317 B.R. 810, 818 (Bankr. S.D. Cal. 2004), aff'd in part, rev'd and remanded in part, 335 B.R. 717 (9th Cir. B.A.P. 2005) (a description such as "review schedules" or "review docket" do not provide information about what legal analysis or issues were involved); Finney, slip op. at *25; In re King, 88 B.R. 770 (Bankr. E.D. Va. 1988). If an attorney maintains that he should be compensated for a particular service, then the attorney must describe the service and the complexity of the matter in sufficient detail so that the court can determine on the face of the fee application that the task required the use of a professional.  In re Meadows Operations, Inc., slip op. at *4; Virissimo, 354 B.R. at 291; In re Howard Love Pipeline Supply Co., 253 B.R. 781, 788 (Bankr. E.D. Tex. 2000); In re Kusler, 224 B.R. 180, 187 (Bankr. N.D. Okla. 1998); Finney, slip op. at *25.

A Chapter 7 trustee seeking compensation for his services has no greater status than any other entity seeking compensation.  The trustee's application for compensation must provide enough detail to allow the court to reach some conclusions regarding an award of reasonable compensation.  U-Can Rent, Inc., 262 B.R. at 151 (citing In re Neill, 242 B.R. 685, 690 (Bankr. D.N.D. 1999)).  The application for compensation must comply with Rule 2016 of the Federal Rules of Bankruptcy Procedure, which provides, in part, that an application for compensation for services or reimbursement of expenses must set forth a detailed statement of the services rendered, time expended, expenses incurred, and the amounts requested.  In re Moon, 258 B.R. 828, 835 (Bankr. N.D. Fla. 2001); 9 Collier on Bankruptcy ¶ 2016.03 (15th ed. rev. 2001).

**B.  The Objections of the Bankruptcy Administrator to the Applications**

The Bankruptcy Administrator makes two arguments in support of the objection that he filed in each case.  The objection arises when Mr. Magers charges attorney time for trustee duties.  There is no question that a trustee may serve as the attorney for the trustee under Section 327(d), <u>Kieffer</u>, 306 B.R. at 208; <u>Finney</u>, slip op. at *24, but the attorney for the trustee cannot be compensated for administering the estate under Section 704.  11 U.S.C. § 328(b); <u>In re J.W. Knapp Co.</u> 930 F.2d 386, 388 (4th Cir. 1991).  The Bankruptcy Administrator argues that Mr. Magers is acting in his capacity as the trustee in such instances, not as the attorney for the trustee.

The objection also arises when time charged by Mr. Magers for interaction with special counsel is charged as attorney time and not as trustee time.  The Bankruptcy Administrator acknowledges that in some instances the trustee may use his skills as an attorney when interacting with special counsel and that such time should be compensated as attorney time.  However, the Bankruptcy Administrator objects to such time entries where the substance of the interaction appears not to be legal in nature but administrative.[11]  Such entries occur many times in the Applications filed in these three cases.  The Bankruptcy Administrator recommends a

---

[11]This long-standing position of the Bankruptcy Administrator should be no surprise to Chapter 7 trustees in this District.  Attached to the Objection of the Bankruptcy Administrator is a 1998 memorandum from the Bankruptcy Administrator to professionals participating in Chapter 7 cases in this District concerning Chapter 7 fee applications.  Section V addresses the duties of a trustee. After a general list of duties, the memorandum states: "Time spent by Chapter 7 trustees for performing the types of tasks set forth above should not be included in the application by the attorney for the trustee unless the applicant makes clear in the time entry in question that the services of an attorney were required to perform the tasks."

reduction for each such entry.[12]

## C.  Trustee Time Versus Attorney Time

The duties of a Chapter 7 trustee are set forth in Section 704 of the Bankruptcy Code.[13]

The attorney for a Chapter 7 trustee may not be compensated for services that the Bankruptcy

Code requires the trustee to perform.  J.W. Knapp Co. 930 F.2d at 388; Freeland, 168 B.R. at

376; Meadows Operations, Inc., slip op. at *3; Kieffer, 306 B.R. at 208-209.  Section 328(b)[14]

specifically prohibits the compensation of an attorney for the performance of trustee duties.  U.S.

Trustee v. Boldt (In re Jenkins), 188 B.R. 416, 420 (B.A.P. 9th Cir. 1995); Robinson-Wolf, slip

op. at *2.  The reason for Section 328(b) is clear.  While the "purpose of permitting the trustee to

---

[12]The Bankruptcy Administrator advocates a 50% reduction for each such entry in the Lexington Hearth and Dupree cases and a 30% reduction in the Elite Furniture case.

[13]Section 704(a) provides that, among other things, a Chapter 7 trustee shall (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest; (2) be accountable for all property received; (3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title; (4) investigate the financial affairs of the debtor; (5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper; (6) if advisable, oppose the discharge of the debtor; (7) . . . furnish such information concerning the estate and the estate's administration as is requested by a party in interest; (8) if the business of the debtor is authorized to be operated, file . . . periodic reports and summaries of the operation of such business . . . ; [and] (9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee; . . . 11 U.S.C. § 704(a).

[14]"If the court has authorized a trustee to serve as an attorney or accountant for the estate under section 327 (d) of this title, the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee performed services as attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate."  11 U.S.C. § 328(b).

serve as his own counsel is to reduce costs,"[15] it also creates the potential for circumventing the

limitations on trustee compensation set by Section 326(a).[16]

It is the duty of the bankruptcy court to determine whether services by an attorney-trustee

are legal services or whether they are ministerial duties of the trustee.  Freeland, 168 B.R. at 376.

Those courts that have been called upon to draw the attorney-versus-trustee line have done so on

the basis of whether the trustee could perform the task or service without a law license.

Generally, "a trustee will be held to the standard of a sophisticated pro se litigant and will be

expected to handle routine administrative matters without the need of counsel."  In re Smith, No.

_____

[15]H.R. Rep. No. 95-595, 95th Cong., 1st Sess., at 329 (1977), as reprinted in 1978
U.S.C.C.A.N. 5963, 6285.

[16]One court explains:
> When the trustee-attorney applies for compensation for legal services
> rendered to the estate, such application is evaluated upon the basis of whether
> such legal services were actual and necessary and, significantly, there is no
> statutory limitation imposed upon the amount of compensation which may be
> awarded to the trustee-attorney in that context.  Thus, while the retention of the
> trustee in a dual capacity as attorney was primarily designed as a means by which
> to reduce the amount of administrative expenses incurred by a bankruptcy estate,
> such dual retention also creates a potential vehicle by which the statutory
> limitation on trustee compensation might be effectively circumvented, thereby
> actually increasing the amount of administrative expenses if the trustee-attorney is
> permitted to transform what otherwise would be characterized as trustee services
> into legal services.

Howard Love Pipeline Supply Co., 253 B.R. at 787 (footnotes omitted).  Congress recognized
this potential problem, emphasizing that the ability of a trustee to employ himself as his attorney
> was not included to provide the trustee with a bonus by permitting him to receive
> two fees for the same service or to avoid the maxima fixed in section 326. Thus,
> this subsection [§ 328(b)] requires the court to differentiate between the trustee's
> services as trustee, and his services as trustee's counsel, and to fix compensation
> accordingly. Services that a trustee normally performs for an estate without the
> assistance of counsel are to be compensated under the limits fixed in section 326.
> Only services that he performs that are normally performed by trustee's counsel
> may be compensated under the maxima imposed by this section.

H.R. Rep. No. 95-595, 95th Cong., 1st Sess., at 329 (1977), as reprinted in 1978 U.S.C.C.A.N.
5963, 6285.

97-62183, slip op. at *8 (Bankr. D. Ore. July 23, 2008) (2008 WL 2852263). Several courts have stated that the attorney for the trustee should only perform services that someone without a law license could not perform. Virissimo, 354 B.R. at 290; Garcia, 317 B.R. at 816; In re Polk, 215 B.R. 250, 253 (Bankr. M.D. Fla. 1997); In the Matter of Concrete Products, Inc., No. 88-20540, slip op. at *24 (Bankr. S.D. Ga. Feb. 7, 1992) (1992 WL 12001764). Other courts state that the attorney for the trustee should be compensated for contested matters and adversary proceedings, for attending court in his capacity as an attorney when the trustee has an interest, and for the performance of other specialized services that cannot be done lawfully without engaging a professional. Smith, slip op. at *8; U-Can Rent, Inc., 262 B.R. at 154 n.16; Howard Love Pipeline Supply Co., 253 B.R. at 788; In re Perkins, 244 B.R. 835, 842 (Bankr. D. Mont. 2000); In re Haggerty, 215 B.R. 84, 86 (Bankr. M.D. Fla. 1997); In re Kuhn, 150 B.R. 825, 826 (Bankr. M.D. Fla. 1993); In re Holub, 129 B.R. 293, 296 (Bankr. M.D. Fla. 1991). Still other courts hold that a trustee may employ a professional only for tasks that require special expertise beyond the expertise that is expected of an ordinary trustee. Boldt, 188 B.R. at 420; In re McAuley Textile Corp., 11 B.R. 646, 648 (Bankr. D. Me. 1981); 3 Collier on Bankruptcy ¶ 327.04[8][b] at 327-28 (15th ed. rev. 2008). Only when unique circumstances arise may an attorney be compensated for services that coincide or overlap with the trustee's statutory duties pursuant to Section 704, and only then to the extent of matters requiring legal expertise. J.W. Knapp Co. 930 F.2d at 388; Freeland, 168 B.R. at 378; Smith, slip op. at *8; Garcia, 317 B.R. at 816; Finney, slip op. at *25.

The Applications in these three cases request compensation for numerous services that do not require a law license. Many of them fall squarely within the scope of a trustee's duties as

enumerated in Section 704.  Consequently, Mr. Magers may not be compensated for them in his capacity as attorney for the Trustee.  They fall into one or more of the following categories.

    1.  Reviewing the Debtor's Records.  See Garcia, 317 B.R. at 816 n.4 (examining the debtor's papers); Garcia, 317 B.R. at 819 (reviewing the debtor's file re status of administration); Howard Love Pipeline Supply Co., 253 B.R. at 792 n.14 (reviewing the debtor's books and records);  In re Adelson, 239 B.R. 627, 629 (Bankr. S.D. Fla. 1999) (review the debtor's file); Kuhn, 150 B.R. at 826-27 (reviewing the debtor's file); Holub, 129 B.R. at 295-96 (initial review of the debtor's books and records); In re McKenna, 93 B.R. 238, 242 (Bankr. E.D. Cal. 1988) (examination of the debtor's papers); King, 88 B.R. at 771 (reviewing the debtor's files); McAuley Textile, 11 B.R. at 648-49 (examining the debtor's books and records); 11 U.S.C. § 704(a)(4) ("investigate the financial affairs of the debtor").

    2.  Investigating Estate Property.  See Virissimo, 354 B.R. at 294 (reviewing or inspecting the debtor's property); Howard Love Pipeline Supply Co., 253 B.R. at 792-94 (telephone call to the debtor's attorney or to a creditor's attorney to investigate assets); Finney, slip op. at *28 (gathering information concerning the debtor); 11 U.S.C. § 704(a)(4) ("investigate the financial affairs of the debtor").

    3.  Communicating with Other Parties.  See Smith, slip op. at *9 (communicating with creditor about the debtor's assets); Virissimo, 354 B.R. at 298 (calls to and from information seekers); Garcia, 317 B.R. at 824 (answering inquiries from creditors, employees, etc.); McKenna, 93 B.R. at 242 (routine calls and correspondence with information seekers); Howard Love Pipeline Supply Co., 253 B.R. at 792-94 (call from creditor re relief from stay and

14

arrangements for creditor to obtain collateral); <u>Holub</u>, 129 B.R. at 295-96 (communication with debtor, creditors, and attorneys re status of case); <u>McKenna</u>, 93 B.R. at 241 (meeting with debtor counsel); <u>Wilmon</u>, 61 B.R. at 993 (review and drafting of correspondence re status of property of estate); <u>In the Matter of Minton Group, Inc.</u>, 33 B.R. 38, 41 (Bankr. S.D.N.Y. 1983) (calls to and from information seekers); 11 U.S.C. § 704(a)(4) ("investigate the financial affairs of the debtor"); 11 U.S.C. § 704(a)(7) ("furnish such information concerning the estate and the estate's administration as is requested by a party in interest").

4.  Reviewing and Objecting to Claims.  <u>See</u> <u>Smith</u>, slip op. at *9 (reviewing claims before they are in a litigation posture); <u>Garcia</u>, 317 B.R. at 822 (examination of claims and objecting to them); <u>Howard Love Pipeline Supply Co.</u>, 253 B.R. at 792-94 (review of prepetition and administrative claims); <u>Perkins</u>, 244 B.R. at 843 (routine objections to claims that are unopposed and require no legal analysis); <u>Haggerty</u>, 215 B.R. at 86 (routine objections to claims that are unopposed and require no legal analysis); <u>Kuhn</u>, 150 B.R. at 826-27 (review of claims); <u>Holub</u>, 129 B.R. at 295-96 (routine objections to claims, such as lack of documentation); <u>King</u>, 88 B.R. at 771 (preparing objections to claims); 11 U.S.C. § 704(a)(5) ("examine proofs of claims and object to the allowance of any claim that is improper").  The preparation of a routine objection to a claim that requires no legal analysis is a trustee duty.  Objections based on (a) a lack of appropriate documentation or support for the claim or (b) an inconsistency between the amount of the claim and the amount shown on the debtor's records or (c) two claims for the same indebtedness are examples of routine objections that require no legal analysis.  If a legal analysis is necessary to the objection, then it is a service that must be provided by an attorney.

5.  Communicating with and Supervising Estate Professionals.  <u>See</u> <u>Garcia</u>, 317 B.R. at

816 n.4 (acting as liaison with special counsel); Howard Love Pipeline Supply Co., 253 B.R. at

792 n.14 (corresponding with estate professionals); Holub, 129 B.R. at 295-96 (supervision of

professionals); McKenna, 93 B.R. at 242 (acting as liaison with special counsel); In re Jebco,

Inc., 44 B.R. 81, 83-84 (Bankr. W.D. Ky. 1984) (audit conference with estate CPA); 11 U.S.C.

§ 704(a)(1) ("collect and reduce to money the property of the estate for which such trustee

serves"); 11 U.S.C. § 704(a)(7) ("furnish such information concerning the estate and the estate's

administration as is requested by a party in interest").

     6.  Selling or Disposing of Estate Assets.  See Virissimo, 354 B.R. at 295 (routine

negotiations re the sale of the debtor's property); Garcia, 317 B.R. at 824 (liquidate estate

assets); Howard Love Pipeline Supply Co., 253 B.R. at 792 n.14 (advertising assets for sale,

attending asset auctions, locating buyers for assets); Howard Love Pipeline Supply Co., 253 B.R.

at 792-94 (telephone call from creditor attorney re asset disposition); Adelson, 239 B.R. at 629

(call to auctioneer re asset liquidation); In re Boltec Industries, Inc., No. 91-21463, slip op. at *2

(Bankr. E.D. Mich. Jan 8, 1993) (1993 WL 853018) (communicating with various parties re sale

of the debtor's assets); In re Gary Fairbanks, Inc., 111 B.R. 809, 997 (Bankr. N.D. Iowa 1990)

(calls re the sale of assets); McKenna, 93 B.R. at 241 (communication with prospective buyers);

King, 88 B.R. at 771 (reviewing proposal by auctioneer to sell estate assets, and communicating

with auctioneer); McAuley Textile, 11 B.R. at 648-49 (selling estate property); 11 U.S.C. §

704(a)(1) ("collect and reduce to money the property of the estate for which such trustee

serves").

     Attached to this opinion are three appendices, one for each Application.  They contain the

time entries for services for which Mr. Magers may not be compensated as attorney for the

Trustee.  The appendices represent the Court's analysis of the three Applications.  While the analysis of most of the time entries was straightforward, some required considerable reflection. When it appeared from a particular entry that Mr. Magers was using his legal skill or knowledge, even though the task could be categorized as a trustee duty, then compensation was allowed. The line is not easily drawn.[17]  Given the lack of detail in certain time entries and his failure to supplement the Applications, Mr. Magers has himself to blame if the line is not drawn as precisely as he might wish.[18]

The Bankruptcy Administrator objected to numerous time entries for which the Court will allow compensation to be paid to Mr. Magers in his capacity as attorney for the Trustee.[19]

---

[17]Many courts have noted that it is often difficult to distinguish between necessary legal services, for which the attorney-trustee may receive compensation as the attorney for the trustee, and statutory trustee duties, for which the attorney-trustee may not receive compensation as an attorney.  In re Barkell, No. 05-38602, slip op. at *4 (Bankr. D. Utah Aug. 11, 2006) (2006 WL 4846380); Perkins, 244 B.R. at 838; Polk, 215 B.R. at 253; In re Finney, slip op. at *25; Concrete Products, Inc., slip op. at *17.  Such a line, as the Third Circuit Court of Appeals has observed, "is not easy to draw."  In re Meade Land and Dev. Co., Inc., 527 F.2d 280, 285 (3rd Cir. 1975).  Nor is it necessarily an enjoyable task.  See Perkins, 244 B.R. at 838 ("One of the most unpleasant judicial duties bankruptcy judges are called upon to perform involves reviewing fee applications submitted by professionals. The Court's task is especially unpleasant when the Trustee is permitted to serve not only as trustee but also as the attorney for the trustee, because in such instances, the Court is generally presented with two fee requests.") (citations omitted).

[18]The burden is on the attorney to establish that services for which compensation is sought constitute services outside the scope of the trustee's ordinary duties.  Smith, slip op. at *8; Meadows Operations, Inc., slip op. at *4; Virissimo, 354 B.R. at 291; Perkins, 244 B.R. at 838; Kusler, 224 B.R. at 186; Polk, 215 B.R. at 253.

[19]Although the Bankruptcy Administrator made no objection on this basis, the Court notes that very few time entries in the Applications were for less than two tenths of an hour. Section IV(A)(5)(a) of the Fee Application Memorandum states that "Apparent 'minimum' billing times, such as .20 hours for a phone call or .30 hours for a letter (regardless of length of call or letter), are not acceptable and may result in reduction in allowed hours."  Many of the questioned time entries in these three cases were in increments of two tenths of an hour for "Review" or "Phone Call."  However, no time entries were reduced or denied on this basis.

All time entries not shown on the attached appendices will be allowed. The Bankruptcy Administrator objected to certain entries that described the review of pleadings or the preparation of pleadings, including the preparation of applications to employ professionals and fee applications. The Court views these activities as services that ought to be provided by an attorney because they require legal knowledge, skill, and expertise that even a sophisticated layman would rarely possess. For instance, when a pleading is reviewed, legal knowledge is often needed to determine its meaning and potential implications, whether a response is needed or desired, or whether some other action ought to be taken. Even a determination of if, when, and how a response should be made requires legal acumen that few laymen possess. Unless it is clear from the context of such an entry that no legal skill or knowledge is involved, this Court will allow a Chapter 7 trustee-attorney to receive compensation for such services in his capacity as an attorney.

## CONCLUSION

<u>Lexington Hearth Lamp and Leisure, LLC</u>

Mr. Magers seeks compensation as attorney for the Trustee in the amount of $3,547.50 and Trustee commission and expenses of $1,529.71, for total compensation of $5,077.21. Pursuant to Appendix A, $1,406.00 of attorney compensation shall be disallowed because the time entries shown on Appendix A are statutory duties that must be performed by the Trustee pursuant to Section 704 of the Bankruptcy Code. Compensation as attorney for the Trustee shall be allowed in the amount of $2,141.50. The Trustee commission and expenses shall be allowed in the amount of $1,529.71, for total compensation of $3,671.21.

<u>Elite Furniture Manufacturing, Inc.</u>

Mr. Magers seeks compensation as attorney for the Trustee in the amount of $18,214.00

and Trustee commission and expenses of $7,607.36, for total compensation of $25,821.36.

Pursuant to Appendix B, $8,422.00 of attorney compensation shall be disallowed because the

time entries shown on Appendix B are statutory duties that must be performed by the Trustee

pursuant to Section 704 of the Bankruptcy Code.  Compensation as attorney for the Trustee shall

be allowed in the amount of $9,792.00.  The Trustee commission and expenses shall be allowed

in the amount of $7,607.36, for total compensation of $17,399.36.

<u>Jeffrey Dale Dupree</u>

  Mr. Magers seeks compensation as attorney for the Trustee in the amount of $1,631.50

and Trustee commission and expenses of $812.93, for total compensation of $2,444.43.

Pursuant to Appendix B, $336.00 of attorney compensation shall be disallowed because the time

entries shown on Appendix C are statutory duties that must be performed by the Trustee

pursuant to Section 704 of the Bankruptcy Code.  Compensation as attorney for the Trustee shall

be allowed in the amount of $1,295.50.  The Trustee commission and expenses shall be allowed

in the amount of $812.93, for total compensation of $2,108.43.

  This memorandum opinion constitutes the Courts' findings of fact and conclusions of

law.  Separate orders will be entered pursuant to Fed. R. Bankr. P. 9021.

<u>Appendix A</u>

<u>Lexington Hearth Lamp & Leisure</u>, LL, Case No. 05-51398

| | | |
|---|---|---|
| 5-12-05 | Call from Vic Bost, Debtor's counsel, and discuss several items including status of possible lien and lien documents from Lexington State Bank | .30 - $57.00 |
| 5-12-05 | Call to Mike Hennisey at LSB and left detailed message requesting security documents including Note, Security Agreement and UCCs in connection with possible lien of LSB on Debtor's inventory | .10 -$19.00 |
| 5-12-05 | Call from Thompson Miller, counsel for LSB, and discuss his client's lien situation and possible Motion for Relief | .40 -$76.00 |
| 5-16-05 | Call to Thompson Miller, counsel for LSB and left detailed message in regard to need for recording data on UCC as well as comment on possible disposition of inventory by estate | .20 - $38.00 |
| 5-17-05 | Receive information from Thompson Miller, counsel for LSB in regard to recorded UCC | .20 - $38.00 |
| 5-19-05 | Return call to Robert Furr, landlord, and discuss that LSB would proceed with foreclosure on inventory since lien appears to be satisfactory unless estate determines that value is above amount of secured debt | .30 -$57.00 |
| 6-20-05 | Call to Bob Price's office and left detailed message with Robin Lawler in regard to employment of Price as Special Counsel; also call to Thompson Miller, counsel for LSB, and discuss Account Receivables which estate is holding and lien on same by Thompson's client requests that estate retain same for costs | .40 - $76.00 |
| 6-20-05 | Letter to Vic Bost, Debtor's counsel, in regard to information needed for preference review along with another item | .50 - $95.00 |
| 6-21-05 | Talk with Thompson Miller, counsel for Lexington State Bank, in regard to Account Receivables being held by estate and agree that estate would retain same for costs of administration | .30 -$57.00 |
| 6-29-05 | Receipt and review of letter from Charles McGirt to Vic Bost re Order for Relief as to Lexington State Bank | .20 -$38.00 |
| 8-3-05 | Talk with Bob Price in regard to status of the matter set for | |

|          | hearing today on Application to Employ Special Counsel | .20 - $38.00 |
|----------|---------|---------|
| 8-3-05   | Attend hearing on Application to Employ Special Counsel | .50 - $95.00 |
| 8-3-05   | Talk with Bob Price, anticipated Special Counsel, in regard to results of hearing today on Application to Employ Special Counsel | .20 - $38.00 |
| 10-7-05  | Receive transmittal from Roy McDonald, counsel for Davidson Electric Wholesale Supply, in regard to status of discharge and return call to McDonald | .30 - $57.00 |
| 10-7-05  | Call from Roy McDonald, counsel for Davidson Electric, and explain discharge in regard to this being a corporate Debtor | .20 - $38.00 |
| 1-24-06  | Return call to Blossom Gas and discuss with party there their questions in regard to estate's pending action against them on a preference | .30 - $57.00 |
| 1-31-06  | Call to Bob Price, Special Counsel, and discuss several pre-trials set for hearing tomorrow | .30 - $57.00 |
| 2-8-06   | Call from Mrs. Wendt, possible deposit creditor, and discuss notice she has received re Application to Approve Settlement | .40 - $76.00 |
| 3-10-06  | Review and file letter from Bob Price's office in regard to Settlement with Blossman Gas | .20 - $38.00 |
| 6-13-06  | Talk with Beth in Bob Price's office re status of Order Approving Compensation for Special Counsel | .20 - $38.00 |
| 4-16-07  | Assist in review and preparation of Objection to Claims | .40 - $76.00 |
| 4-20-07  | Review Notice of Trustee's Objection to Claims and provide along with Trustee's Objection to Allowance of Claims to three creditors | .80 - $152.00 |
| 5-1-07   | Return call to Noreen Weant, creditor, and discuss estate's Objection to Claim and review Bankruptcy Code Section 507 and determine from conversation that claim should be as originally filed and agree to resolve matter when Order Allowing Trustee's Objection to Claims is prepared; also prior review of file in preparation of call to Ms. Weant | .50 - <u>$95.00</u> |

Total     <u>$1,406.00</u>

Appendix B

Elite Furniture Manufacturing, Inc., Case No. 06-50668

| | | |
|---|---|---|
| 6-29-06 | Talk with Jim Vaughn, counsel for petitioning creditors, and discuss overview of case including possible fraudulent conveyances and/or preferences | .50 - $95.00 |
| 6-29-06 | Research information concerning principal of Debtor and call to Tim Miller, principal of Debtor, and left detailed message, the foregoing in connection with efforts to have all appropriate documents filed with court by time set forth and order appointing Trustee and setting time for Debtor to file schedules | .50 - $95.00 |
| 6-29-06 | Call to Tim Miller, principal of Debtor, and left detailed message in regard to follow-up on need to discuss case, estate's intention to pursue compliance with terms of order appointing Trustee and setting time for Debtors to file schedules | .10 - $19.00 |
| 6-30-06 | Call from Mrs. Miller, wife of principal of Debtor, and discuss several matters including possible legal issues surrounding Mr. Miller's appearing on behalf of Debtor as principal | .30 - $57.00 |
| 6-30-06 | Call from Tim Miller, principal of Debtor, and discuss numerous matters including need for information for preference review and discuss his questions concerning preferences and also advise that estate would need copies of documents in regard to secured debt with Lexington State Bank | .50 - $95.00 |
| 7-5-06 | Talk with Tim Miller, principal of Debtor, in regard to need for copies of security documents in regard to Deed of Trust to Lexington State Bank and also same for his factor, Accord Financial | .70 - $133.00 |
| 7-7-06 | Conference with Tim Miller, principal of Debtor, to discuss and review various items including provide to him order for relief and order appointing Trustee and setting time for Debtor to file schedules and also assist Debtor in lieu of having its own counsel concerning Schedules and Statement of Financial Affairs | 1.0 - $190.00 |

| | | |
|---|---|---|
| 7-10-06 | Talk with Thompson Miller, counsel for Lexington State Bank, concerning contact at his client for copies of security documents | .20 - $38.00 |
| 7-10-06 | Call to April Cassady with Lexington State Bank and request copies of security documents on realty and personalty | .40 - $76.00 |
| 7-13-06 | Call from Mrs. Miller, wife of principal of Debtor, concerning questions on compliance with terms of order directing that schedules be filed by tomorrow | .30 - $57.00 |
| 7-18-06 | Conference with Tim Miller, principal of Debtor, and receive various documents requested including information needed for analysis to determine if any preferences and/or fraudulent conveyances | .50 - $95.00 |
| 7-18-06 | Talk with Bob Price's office, anticipated Special Counsel, in regard to application to employ special counsel | .20 - $38.00 |
| 7-19-06 | Initiate review of various records of Debtor including promissory note and assignment agreement | .40 - $76.00 |
| 7-19-06 | Talk with clerks office at length with Mike West, Bankruptcy Administrator, concerning logistics on possibly assisting Debtor with correct compilation of info needed to proceed with effective filing of schedules, etc., and discuss possible application for administrative expense that might be filed by estate and discuss Bankruptcy Rule 1007(k); also talk with Reid Wilcox re the foregoing | .80 - $152.00 |
| 7-19-06 | Call from Tim Miller, principal of Debtor, and discuss possible emergency application for private sale of personalty | .30 - $57.00 |
| 7-24-06 | Call from Tim Miller and Tammy Miller and discuss further obtaining necessary info to complete filing so notice can be given to creditors of the case | .30 - $57.00 |
| 7-14-06 | Conference with Tim Miller, principal of Debtor, in regard to info needed for estate's preparation of creditor info needed by clerk's office to finalize filing | .40 - $76.00 |

| | | |
|---|---|---|
| 8-2-06 | Return call to Thompson Miller, counsel for LSB, and discuss status of realty and whether any Motion for Relief has been filed | .40 - $76.00 |
| 8-21-06 | Talk with Bob Price, proposed special counsel, re hearing scheduled for this week on application to employ special counsel | .20 - $38.00 |
| 8-21-06 | Talk with Tim Miller, principal of Debtor, in regard to several matters including need for info for preference analysis | .40 - $76.00 |
| 8-21-06 | Review and file copy of letter from Bob Price's office, special counsel, to Debtor in regard to info needed for preference analysis | .20 - $38.00 |
| 8-22-06 | Review and file letter from Alvin Pugh, counsel for J&P Finishing, Inc., in regard to Default Judgment | .20 - $38.00 |
| 8-24-06 | Call from April Cassidy with Lexington State Bank and discuss various matters including need for info for preference analysis | .40 - $76.00 |
| 10-6-06 | Call from James Vaughn, counsel for petitioning creditors, and discuss status of case including current review of documents for preference analysis by special counsel | .40 - $76.00 |
| 10-16-06 | Review transmissions from Bob Price to Kristen Nardone all concerning analysis of Debtor's records for possible preferences | .20 - $38.00 |
| 10-17-06 | Call to Tim Miller, principal of Debtor, and discuss several matters including clarification per request from LSB re cancellation of UCC | .20 - $38.00 |
| 10-17-06 | Call from Tim Miller following up inquiry in regard to cancellation of UCC held by LSB and make note to file | .30 - $57.00 |
| 10-17-06 | Talk with Bob Price, special counsel, re possible issues in regard to LSB's UCC filing | .20 - $38.00 |
| 10-18-06 | Call Thompson Miller, counsel for LSB, and left message, the foregoing following up UCC question | .10 - $19.00 |
| 10-18-06 | Call again to Thompson Miller, counsel for LSB, but no | |

|  | contact made | .10 - $19.00 |
|---|---|---|
| 10-18-06 | Call from April Cassady with LSB and discuss several matters including response of Tim Miller, principal, re UCC question | .20 - $38.00 |
| 10-18-06 | Talk with Thompson Miller, counsel for LSB, re response of Tim Miller, principal, re UCC question | .20 - $38.00 |
| 10-25-06 | Conference with Tim Miller, principal of Debtor, and discuss status of UCC issues surrounding Security Interest held by LSB; also call to April Cassidy at LSB and obtain approval from potential secured creditor in regard to further disposition of equipment | .50 - $95.00 |
| 11-8-06 | Talk with Jim Vaughn, counsel for petitioning creditors, in regard to possible UCC issue concerning cancellation in apparent error | .40 - $76.00 |
| 11-13-06 | Call from Christine Justice whose husband of a creditor of Debtor and discuss case including possible legal rights of her husband since NSF checks received from Debtor and advise her to obtain counsel if she so chooses | .30 - $57.00 |
| 11-20-06 | Talk with Tim Miller re status of legal issues surrounding cancellation of UCC apparently in error by Sun Trust | .10 - $19.00 |
| 11-28-06 | Review and file transmission from Thompson Miller, counsel for LSB, concerning intention to proceed with Motion for Relief | .20 -$38.00 |
| 11-28-06 | Call to Tim Miller, principal of Debtor, and discuss various matters including motion for relief by LSB in regard to realty | .40 -$76.00 |
| 12-4-06 | Talk with Bob Price's office, special counsel, re estate's position in regard to pending motion for relief by LSB concerning Debtor's realty | .20 - $38.00 |
| 12-9-06 | Return call to Tim Miller, principal of Debtor, and discuss status of his 2004 Exam and advise that hearing on same is set for this week, also discuss lease agreement that was entered into by Cliff Stewart and apparently by Miller | .30 - $57.00 |
| 12-11-06 | Call from Tim Miller and discuss his intention to proceed with Lease on realty and advise of estate's position re same including | |

|         |                                                                                                                                                                                    |              |
|---------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|--------------|
|         | need for Court approval as well as that of Lexington State Bank in view of the latter's Motion for Relief                                                                            | .40 -$76.00  |
| 12-11-06 | Call to April Cassady, LSB, and left detailed message re possible lease on realty; call to Thompson Miller, counsel for LSB, and also left message re several matters including lease and also his pending motion for relief | .20 - 38.00  |
| 12-11-06 | Talk with April Cassady at LSB re possible Lease on realty                                                                                                                          | .20 - 38.00  |
| 12-11-06 | Call to Bob Price, special counsel, and discuss pending motion for relief by LSB                                                                                                    | .50 - 95.00  |
| 12-12-06 | Talk with Bob Price, special counsel, concerning status of possible lease on Debtor's realty and also re uncertainty as to legal effect of the erroneous cancellation of LSB's UCC financing statement | .20 - 38.00  |
| 12-13-06 | Talk with Bob Price, special counsel, re estate's conversation with Thompson Miller, attorney for LSB, re proposed lease                                                            | .20 - 38.00  |
| 12-19-06 | Review and file memo from Thompson Miller, counsel for LSB, in regard to his client's decision in regard to possible Lease                                                          | .20 -38.00   |
| 12-19-06 | Talk with Jim Hundley, counsel for Cliff Stewart, and advise that estate would not pursue the Objection to the Motion for Relief by LSB                                              | .20 - 38.00  |
| 12-26-06 | Prepare and forward to Bob Price transmission concerning estate's position on hearing set for tomorrow on Motion for Relief by Lexington State Bank concerning Debtor's realty       | .30 - 57.00  |
| 12-27-06 | Call to Tim Miller re several matters including follow-up on possible Lease of realty in High Point and advise him that Court had granted through march 28 at hearing today on Motion for Relief and make note to file | .30 - 57.00  |
| 1-4-07  | Return call to Bob Price' office, special counsel, re 2004 exam of Tim Miller and possibly later on involving Cliff Stewart, another principal of Debtor                             | .30 - 57.00  |
| 1-5-07  | Return call to Tim Miller, principal of Debtor, and discuss                                                                                                                         |              |

|       | estate's intention to take his 2004 exam | .30 - $57.00 |
|-------|------------------------------------------|--------------|
| 1-5-07 | Review transmission from Bob Price to Thompson Miller in regard to status of estate's position re possible error in UCC Financing Statement cancellation | .20 - $38.00 |
| 1-8-07 | Review and file copy of letter from Bob Price, special counsel, to Tim Miller, principal of Debtor, in regard to intention to take Miller's 2004 exam | .20 - $38.00 |
| 1-11-07 | Talk with April Cassady at LSB in regard to several matters including possible Lease on building as well as estate's intention to take 2004 Exam of Tim Miller | .30 - $57.00 |
| 1-17-07 | Call from Allen Weidt, with Carolina Commercial Realty, and discuss Debtor's realty premises apparently having been leased by Cliff Stewart, one of Debtor's principals, to High Point Group and discuss terms of lease; call to Thompson Miller, counsel for LSB and advise of the foregoing and discuss | .90 - $171.00 |
| 1-17-07 | Receive transmission from Thompson Miller, counsel for LSB, in regard to his response to estate's request that he file motion for relief concerning his effort to establish lien of his client | .30 - $57.00 |
| 1-17-07 | Call from Marlene Mullins, controller with High Point Group, tenant, and discuss her company's lease that was entered into by Cliff Stewart, one of the principals of Debtor | .40 - $76.00 |
| 1-11-07 | Forward to Bob Price, special counsel, copy of lease agreement entered into by Cliff Stewart, principal of Debtor, with HGP Enterprises along with info from estate in regard to initial background of the foregoing | .50 - $95.00 |
| 1-17-07 | Investigate Debtor's premises in connection with lease agreement apparently entered into by Cliff Stewart, one of the principals of Debtor, also review lease agreement entered into by Stuart on behalf of Debtor with HPG Enterprises; also conference with Thompson Miller, counsel for LSB, to discuss and review the foregoing | 1.60 - $304.00 |
| 1-19-07 | Receive transmission from Thompson Miller, counsel for | |

|  |  |  |
|---|---|---|
|  | LSB, indicating agreement by his client to lease agreement already entered into by Cliff Stewart which bankruptcy estate will need to pursue formally; reply to Miller | .40 - $76.00 |
| 1-19-07 | Receive response from Thompson Miller, counsel for LSB, re estate's inquiry on one of the details of pursuing lease agreement | .20 - $38.00 |
| 1-22-07 | Call to Jim Hundley, counsel for Cliff Stewart, one of the principals of Debtor, and left message the foregoing concerning his client's lease agreement (TE) 4 | .10 - $19.00 |
| 1-22-07 | Call to Allen Weidt with Carolina Commercial Realty and discuss lease agreement and confirm terms of his arrangement with Cliff Stewart and advise of court process necessary after the fact to have matters approved; forward to Weidt copy of lease agreement along with copy of notice of bankruptcy | .40 - $76.00 |
| 1-22-07 | Call to Jim Hundley, counsel for Cliff Stewart, and discuss at length and in detail lease agreement entered into by his client | .50 - $95.00 |
| 1-22-07 | Receive response from Thompson Miller, counsel for LSB, in regard to realtor commissions in connection with possible nunc pro tunc approval of lease agreement | .20 - $38.00 |
| 1-23-07 | Talk with Bob Price, special counsel, re status of and background in regard to lease agreement | .30 - $57.00 |
| 1-23-07 | Receive response from Jim Hundley, counsel for Cliff Stewart, in regard to estate's inquiry re lease agreement | .20 - $38.00 |
| 1-24-07 | Talk with Bob Price, special counsel, re status of estate's negotiations and contact with Jim Hundley, counsel for Cliff Stewart, re lease agreement | .20 - $38.00 |
| 1-25-07 | Receive transmission from Bob Price's office, special counsel, re possible 2004 exam for Cliff Stewart and reply to Price | .30 - $57.00 |
| 1-29-07 | Call to Bob Price's office, special counsel, and left message for Kristen Nardone concerning hearing set for this week on motion for 2004 exam and left message | .10 - $19.00 |

| | | |
|---|---|---|
| 1-29-07 | Talk with Bob Price, special counsel, re estate's conversation with Tim Miller, one of Debtor's principals, concerning lease agreement | .20 - $38.00 |
| 1-31-07 | Call from Bob Price's office, special counsel, re status of possible 2004 exam of Cliff Stewart | .20 - $38.00 |
| 2-6-07 | Call from Tim Miller in regard to 2004 exam set for today | .30 - $57.00 |
| 2-6-07 | Call from Bob Price's office, special counsel, in regard to 2004 exam to be held this afternoon | .20 - $38.00 |
| 2-7-07 | Call to Jim Hundley, counsel for Cliff Stewart, and left detailed message advising of estate's intention to proceed with motion for approval of lease agreement and underscore in message of desire to proceed consensually if possible but that estate would proceed in any event and make note to file | .20 - $38.00 |
| 2-7-07 | Call from Jim Hundley, counsel for Cliff Stewart, and discuss in some detail continuing negotiations in regard to Lease Agreement | .50 - $95.00 |
| 2-7-07 | Transmission to Thompson Miller, counsel for LSB, in regard to status of seeking court approval for lease agreement | .30 - $57.00 |
| 2-7-07 | Transmission to Bob Price, special counsel, requesting holding off on filing motion to approve lease agreement until further conversation with Jim Hundley, counsel for Cliff Stewart, and further advising Price of Hundley's intention to talk with Thompson Miller, counsel for LSB | .30 - $57.00 |
| 2-7-07 | Receive response from Thompson Miller in regard to his anticipated contact with Jim Hundley on the lease agreement and call to Miller and left message | .30 - $57.00 |
| 2-7-07 | Receive request from Bob Price's office, special counsel, re lease agreement | .20 - $38.00 |
| 2-9-07 | Talk with Thompson Miller, counsel for LSB, in regard to several pending matters including lease agreement as well as his motion for relief | .50 - $95.00 |

| 2-9-07 | Prepare and forward to Bob Price, Special Counsel, latest information concerning estate's contract with Thompson Miller, LSB counsel, concerning Lease Agreement as well as his Motion for Relief | .40 - $76.00 |
|---|---|---|
| 2-12-07 | Several calls to Bob Price, special counsel, but no contact made, the foregoing concerning logistics and status on possible motion to approve lease agreement | .20 - $38.00 |
| 2-12-07 | Talk with Bob Price, special counsel, in regard to various pending issues including motion to approve lease agreement and hearing date on motion for relief from stay filed by LSB in regard to UCC financing statement (TE) 23 | .50 - $95.00 |
| 2-14-07 | Talk with Bob Price, special counsel, re proposed approach to resolution of motion to approve lease agreement as well as motion to approve settlement with Cliff Stewart concerning rental income received by the latter | .40 - $76.00 |
| 02-15-07 | Review transmission from Jim Hundley, counsel for Cliff Stewart, along with various attachments in regard to support of expenses requested by Hundley's client in the context of resolution of the lease agreement, forward transmission to Bob Price re estate's input on the foregoing | .50 - $95.00 |
| 2-22-07 | Transmission to Thompson Miller, counsel for LSB, re status of estate's response to his settlement offer with copy to Bob Price, special counsel | .30 - $57.00 |
| 2-22-07 | Receive brief response from Thompson Miller, counsel for LSB, in regard to estate's intention to respond to his settlement offer | .20 - $38.00 |
| 2-26-07 | Return call to Marlene, controller at High Point Group, re Debtor's building in High Point and discuss several matters including anticipated hearings on motion to approve lease agreement as well as other pending matters | .20 - $38.00 |
| 2-27-07 | Transmission to Bob Price, Special Counsel, in regard to estate's earlier conversation with Thompson Miller, LSB counsel, concerning possible counter offer on Settlement | .30 - $57.00 |

| | | |
|---|---|---|
| 2-27-07 | Call from Bob Price, Special Counsel, and discuss his proposed Response to Motion for Relief by Lexington State Bank | .30 - $57.00 |
| 2-27-07 | Receive transmission from Thompson Miller, counsel for LSB, re his client's willingness to consider an increased counter offer from estate on possible global settlement | .20 - $38.00 |
| 2-28-07 | Call from Bob Price, Special Counsel, and discuss status of Settlement negotiations with LSB and review file re certain information needed by Price | .40 - $76.00 |
| 2-28-07 | Receive copy of transmission from Bob Price, special counsel, to Thompson Miller, counsel for LSB, in regard to info being used by both parties in connection with analysis of settlement | .20 - $38.00 |
| 2-28-07 | Call from Bob Price, Special Counsel, and discuss Settlement offer from LSB and discuss and advise re counter offer | .30 - $57.00 |
| 2-28-07 | Review another counter offer to LSB from Bob Price; also review response to same from Thompson Miller | .20 - $38.00 |
| 2-28-07 | Review transmission from Bob Price to Thompson Miller accepting last offer from LSB | .20 - $38.00 |
| 3-1-07 | Receive info from Alan Weidt, commercial realtor, in regard to lease agreement; call to Weidt and discuss and advise of proposed settlement and provide to him name of counsel for LSB, Thompson Miller | .50 - $95.00 |
| 3-2-07 | Prepare and forward to Thompson Miller, counsel for LSB, info from Alan Weidt, Carolina Commercial Realty, in regard to lease agreement and his role as agent for Cliff Stewart, the foregoing along with lengthy transmission from estate concerning status of the foregoing in context of tentative settlement and copy to Bob Price, special counsel | .60 - $114.00 |
| 3-7-07 | Review transmission from Bob Price to Thompson Miller, counsel for LSB, in regard to proposed settlement | .20 - $38.00 |

| | | |
|---|---|---|
| 3-8-07 | Talk with Bob Price, special counsel, re rental income in regard to Debtor's realty in High Point in connection with possible settlement | .20 - $38.00 |
| 3-9-07 | Review and file transmission from Thompson Miller, counsel for LSB, to Bob Price, special counsel, concerning estate's pending motion to assume lease agreement | .20 - $38.00 |
| 3-20-07 | Return call to Marlie Mullins. controller with High Point Group, in regard to lease agreement and discuss status of foregoing and advise that settlement in process which would impact lease | .30 - $57.00 |
| 3-20-07 | Make note to file in regard to eventual need for follow up with Marlie Mullins at High Point Group in regard to final disposition of estate's interest in lease | .10 - $19.00 |
| 3-21-07 | Review inquiry from Thompson Miller, counsel for LSB, in regard to settlement agreement | .20 - $38.00 |
| 3-21-07 | Forward inquiry to Bob Price, special counsel, re Thompson Miller's request for follow up on various matters pending since hearing set for next week | .30 - $57.00 |
| 3-21-07 | Review and file transmission from Thompson Miller, counsel for LSB, to Bob Price in regard to settlement | .20 - $38.00 |
| 3-26-07 | Review request from Thompson Miller, counsel for LSB, in regard to hearing set for this week on him motion for relief, the foregoing directed to Bob Price, special counsel | .20 - $38.00 |
| 3-26-07 | Talk with Bob Price, special counsel, in regard to hearings set for this week on two motions for relief by LSB; call to Thompson Miller, counsel for LSB, and discuss treatment of foregoing at hearings set for this week | .40 - $76.00 |
| 3-28-07 | Talk with Bob Price, special counsel, re result of hearings today on motions by LSB | .30 - $57.00 |
| 3-28-07 | Call to Thompson Miller, counsel for LSB, and advise of result of hearing today on his two motions and discuss matters having been reset for later in April | .40 - $76.00 |
| 3-29-07 | Follow up with High Point Group, tenant, in regard to | |

|         | continuing obligation to estate in regard to lease agreement | .30 - $57.00 |
|---------|------------------------------------------------------------------------------------------|-------------|
| 4-5-07  | Call to Marlene Mullins, controller for HPG, tenant, and discuss several matters including hearing now set for later in April in regard to efforts to reach settlement on all matters with bank | .30 - $57.00 |
| 4-12-07 | Talk with Bob Price, special counsel, re possible clarification and status on hearing set for next week in regard to settlement | .30 - $57.00 |
| 4-18-07 | Talk with Bob Price, special counsel, in regard to results of hearings today and discuss new offer of settlement to Thompson Miller, counsel for LSB, and make note to file | .40 - $76.00 |
| 4-23-07 | Talk with Bob Price, Special Counsel, in regard to inquiry made by Thompson Miller, counsel for LSB, in regard to further review of Uniform Commercial Code | .20 - $38.00 |
| 4-23-07 | Talk with Bob Price, Special Counsel, re estate's position concerning the cancelled UCC Financing Statement after further review of statutory sections referred to by Thompson Miller | .20 - $38.00 |
| 4-25-07 | Talk with Bob Price, special counsel, in regard to treatment of continuing of rental income since foreclosure not to be effectuated until late May or early June | .20 - $38.00 |
| 5-1-07  | Review further transmission from Thompson Miller, counsel for LSB, re status of estate's position on his proposed motion to reconsider and response to Miller | .40 - $76.00 |
| 5-2-07  | Receive response from Thompson Miller, counsel for LSB, in regard to estate's position on his intended motion to reconsider, call to Bob Price re the foregoing and respond again to Miller re estate's position | .60 - $114.00 |
| 5-2-07  | Receive inquiry from Thompson Miller in regard to proposed motion to reconsider and also review proposed motion; call to Bob Price, special counsel, and discuss; respond to Miller advising estate's agreement to proposed motion | .50 - $95.00 |
| 5-2-07  | Call to Marlene Mullins, controller for HPG, tenant, and advise of status of resolving matters with LSB | |

|           |                                                                                                                                                                                                       |                |
|-----------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|----------------|
|           | and of foreclosure sale set by bank for late May and advise of estate's continuing interest in rental income for May (TE) 4                                                                            | .30 - $57.00   |
| 5-2-07    | Review and file transmission between Bob Price and Thompson Miller in regard to status of order denying settlement per previous court hearing in view of anticipated motion to reconsider and respond to Bob Price re the foregoing | .40 - $76.00   |
| 5-3-07    | Receive info from Bob Price in regard to submission of Order Denying Settlement and reply to same                                                                                                      | .30 -  $57.00  |
| 6-4-07    | Receive transmission from Thompson Miller, counsel for LSB, in regard to settlement and estate's performing its obligation to his clients; respond to Miller                                           | .30 - $63.00   |
| 6-5-07    | Talk with Bob Price, special counsel, in regard to following up estate's obligations under terms of settlement with LSB                                                                                | .20 - $42.00   |
| 6-7-07    | Talk with Bob Price, special counsel, in regard to overview of estate's obligations pursuant to terms of settlement                                                                                    | .20 - $42.00   |
| 6-7-07    | Further review of file in connection with resolution of settlement with LSB; letter to Thompson Miller, counsel for LSB, re finalizing estate's obligations pursuant to terms of settlement with copy to Bob Price, special counsel | 1.0 - $210.00  |
| 6-7-07    | Call to Thompson Miller, counsel for LSB, and discuss his directions in regard to logistics on further rental income to be forthcoming from tenant                                                     | .20 - $42.00   |
| 6-28-07   | Conference with Bob Price, special counsel, re status of his efforts on behalf of estate                                                                                                               | .20 - $42.00   |
| 7-3-07    | Call from Henrietta Wheeler, CPA for Cliff Stewart, and discuss further estate's resolution of settlement with LSB and review file and provide info to Wheeler                                         | .40 - $84.00   |
| 7-10-07   | Call from Henrietta Wheeler, CPA for Cliff Stewart, and discuss and provide information in regard to background of estate's settlement with LSB                                                         | .40 - $84.00   |
| 7-11-07   | Call to April Cassidy at LSB re follow up on her call concerning efforts to clarify further the settlement reached and left message                                                                    | .10 - $21.00   |

| | | |
|---|---|---|
| 7-12-07 | Talk with April Cassidy at LSB and review estate's information in connection with pursuit by Cliff Stewart of issues surrounding an apparent dispute with Tim Miller, the other principal of Elite | .40 - $84.00 |
| 9-20-07 | Conference with Bob Price, special counsel, re status of case | .20 - $42.00 |
| 11-26-07 | Call to Bob Price's office, special counsel, and discuss hearing set for this week on application for compensation for special counsel | .20 - $42.00 |
| 11-27-07 | Call from Bob Price to confirm intention concerning appearance on his behalf at hearing tomorrow on application for compensation for special counsel | .20 - $42.00 |
| | Total | $8,422.00 |

Appendix C

Jeffrey Dale Dupree, Case No. 07-50890

| | | |
|---|---|---|
| 7-27-07 | Prepare and forward to Bob Price, anticipated Special Counsel, information in connection with apparent Preference to Equity One | .40 - $84.00 |
| 9-20-07 | Conference with Bob Price, Special Counsel, re status of case | .20 - $42.00 |
| 10-12-07 | Receive message from Bob Price, Special Counsel, re transferring file to Dan Bruton, successor Special Counsel | .20 - $42.00 |
| 12-6-07 | Talk with Dan Bruton, Special Counsel, in regard to Equity One info to follow-up inquiry by Equity One concerning Judgment obtained by estate | .20 - $42.00 |
| 1-8-08 | Review and file letter from Dan Bruton, Special Counsel, re resolution of estate's action against Equity One, Inc. re preference matter; review file re the foregoing | .40 - $84.00 |
| 1-14-08 | Receive status report from Dan Bruton, Special Counsel, re matters in case | .20 - $42.00 |
| | Total | $336.00 |